**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ANTONIO RODRIGUEZ,** | **Civil Action No. 13-2417 (MCA)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**ARLEO, United States District Judge:**

### I.     INTRODUCTION

This matter has been opened to the Court by Antonio Rodriguez' ("Petitioner" or "Rodriguez") filing of a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  Pursuant to Fed. R. Civ. P. 78, upon review of all submissions, this matter is decided without oral argument, and for the reasons stated below, the Court will dismiss the motion and deny a certificate of appealability.

### II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June of 2010, law enforcement officials in Linden, New Jersey observed an individual removing an unidentified package from a 2007 Jeep Cherokee during the course of a suspicious encounter with other individuals.  Officials later seized $999,000 in cash from the tractor trailer driven by the first individual.  Two weeks later, officers conducting surveillance of a different tractor trailer observed Petitioner Rodriguez and a co-conspirator, Luis Mendez–Rivera, arrive at a hotel in South Plainfield, New Jersey in the same jeep they had previously observed.

Rodriguez and Mendez–Rivera entered the hotel, as did the driver of the tractor trailer, who was later identified as Javier Ramirez. The three men drove together in the jeep to two separate warehouses, then returned to the hotel parking lot. There, the officers found approximately 14.6 kilograms of cocaine and 15.8 kilograms of heroin in a hidden compartment in Ramirez's tractor trailer. The subsequent investigation revealed that Rodriguez had traveled outside of New Jersey to coordinate narcotics activities, and had directed the delivery of the $999,000 in cash two weeks earlier.[1]

On August 2, 2010, the undersigned, then a United States Magistrate Judge, authorized a one-count criminal complaint charging Rodriguez, Mendez-Rivera, and Ramirez with a drug trafficking conspiracy. On August 16, 2010, Petitioner was arrested pursuant to the federal complaint and had an initial appearance, at which he was detained pending further proceedings. On August 18, 2010, Steven D. Altman, Esq., retained counsel, entered his appearance on behalf of Petitioner.

On December 14, 2010, a federal grand jury sitting in Newark, New Jersey returned a two-count Indictment against Petitioner, Mendez-Rivera, and Ramirez. Count One charged that on or about July 1, 2010, Petitioner and his co-defendants conspired to possess with intent to distribute 5 kilograms or more of cocaine and 1 kilogram or more of heroin, contrary to 21 U.S.C. § 841(a) and (b)(1)(A), and in violation of 21 U.S.C. § 846. Count Two charged that on or about July 1, 2010, Petitioner and his co-defendants possessed with the intent to distribute 5 kilograms or more of cocaine and 1 kilogram or more of heroin, in violation of 21 U.S.C. §

---

[1] This factual background is taken from the Third Circuit's Opinion denying Petitioner's direct appeal, United States v. Rodriguez, 505 F. App'x 117, 118 (3d Cir. 2012), and the Presentence Report ("PSR") dated August 3, 2011.

841(a) and (b)(1)(A). Petitioner was arraigned on January 18, 2011, and entered a not guilty plea.

After being informed that the parties reached a plea agreement, the Honorable Faith S. Hochberg, U.S. District Judge, referred the matter to the Honorable Patty Schwartz, U.S. Magistrate Judge, for a guilty plea hearing. (April 6, 2011 Transcript, attached as Ex. B to Answer.) It appears from the transcript of the hearing that Petitioner and his codefendant had initially decided to decline the plea deals offered by the government. (*Id.* at 2:22-3:1.) After swearing in the Court's Spanish interpreter (*id.* at 2:6-9), Judge Schwartz conducted a status conference for both Petitioner and his codefendant, Mendez-Rivera. At the status conference, Petitioner's counsel advised Judge Schwartz that just this past Monday, [he] received the plea agreement that is more favorable to Petitioner, which he presented to Petitioner on April 5, 2011. (*See id.* at 5-6.)

The following exchange occurred between the Court and Petitioner's counsel, as he sought to explain why the plea would not being going forward at that time:

> MR. ALTMAN:        Now admittedly, this has been a very difficult case from my perspective. And I think it's again difficult from [the perspective of the Prosecutor]. You know typically in these cases – it starts on Route 287 in South Plainfield with these two Gentlemen and Stephen Turtano's client, who's scheduled to appear before you tomorrow, are arrested in a tractor trailer that Mr. Turano's client was driving. There was a 29 kilos of drugs a combination of coke and heroin. That's all I know about the case. And we've been trying to work out a plea for all of these months. And the plea has changed. Sometimes month-to-month, sometimes from week to week, sometimes from day-to-day.
>
> Most recently this past Monday, I received a plea agreement that is more favorable to my client than the other ones. Tried to talk to my client about it. My client claims we have a language barrier. I'm not going to start defending that right now.
>
> I presented it to him yesterday. I went to see him. Spent time with him. He now wants to talk to you and say to you that he hasn't had enough time to read the documents. He hasn't had enough time to have them interpreted. He hasn't had enough time to consider them. He is being pressured. That's his right. He

has to worry about himself.  He is the defendant who could do from anywhere from 10 to life in terms of the statute.  Sometimes we can get annoyed at it, we can get frustrated by it, but we're not sitting where he is.  That's one issue though.

. . . .

The second issue that's been addressed is my client is apparently very unhappy with me.  Claiming that I don't give him enough time, and I don't speak to him in Spanish, and I don't speak Spanish.  Sometimes I go up there and I think I am doing fine with him, sometimes I bring Mr. Gonzalez and we see all of them together.  You probably don't know it, but you got to get special dispensation in the Essex County Correctional facility for two lawyers to see co-defendants.  And at times I've been with him, as early as last week, where he brought another inmate to interpret.  I'm trying the best I can.  He's unhappy.  He wants to tell you that, and I'll have to deal with that by the appropriate application.  So we don't end up in post-conviction situations later on.

THE COURT:          Hhmm-hmm.

MR. ALTMAN:          And I'll deal with the consequences of that in terms of my representation.

But he would like, if you would permit him to, at least address you and tell you nothing about the case, but his dissatisfaction with me and his dissatisfaction with the feeling he's getting that he's being forced into going to trial.

THE COURT:          Well, would it be of any help to allow you, with the assistance of the court's interpreter, to speak with him with the documents now?  We're all here.  If that would be helpful, I'm happy to give you the opportunity, together with your client, to review the documents and discuss them in more detail.

I would imagine, and if I'm wrong you'll – I'm sure you will correct me, that you did spend time reviewing the documents with your client, and otherwise you wouldn't have indicated an interest in representing on his behalf that he wanted to proceed at a Rule 11 hearing today.  So my guess is that you have probably done it.  Am I correct?

MR. ALTMAN:          I've done it a number of time.  I've spoke to the family members who speak to him almost daily, the documents – so that they could read them to him in Spanish.

So I don't know, I've left copies of the documents with him, telling him to speak to someone in the facility who speaks English and Spanish, and I have met some of them who are adept at the two different languages, and very bright, and understanding what is going on.  So I don't know what more I can do.

4

THE COURT:        Do you want to ask him privately with the interpreter if he would like to spend a few minutes or as much time as he'd like right now, looking at the documents with the assistance of the interpreter, and make a decision as to whether he wants to accept the plea offer or not? We have a highly qualified interpreter her today on a topic that has apparently already been –

MR. ALTMAN:        I welcome the opportunity.

THE COURT:        Would you talk  -- I would prefer you to raise this with him directly before he says anything on the open record.

MR. ALTMAN:        May I could confer a moment?

THE COURT:        Yes.  Sure.  With the assistance of the interpreter.

MR. ALTMAN:        Your Honor - -

THE COURT:        Yes, Sir.

MR. ALTMAN:        -- my client, through the interpreter, has advised me that I apparently misunderstood --

THE COURT:        Okay.

MR. ALTMAN:        -- his dissatisfaction with me.

THE COURT:        Okay.

MR. ALTMAN:        And that his concern is that I gave him a pleas agreement, today's Wednesday, Monday, and today, Wednesday –

THE COURT:        It is.

MR. ALTMAN:        Okay. Monday. And I went over it with him.  He has a wife that he likes to discuss these things with.  And he hasn't had sufficient opportunity to discuss the most recent plea with his wife.

THE COURT:        Okay.

The Court then explained to the parties that "the decision as to whether the plea remains open is wholly vested with the Government" and the Court could not "make a party accept a plea or keep one open or tender one." (*Id.* at 10:15-23.)  In response, the Government indicated that plea agreements had been outstanding for "months and months and months," and just a few days prior to the hearing, the Government offered its most favorable plea agreement, allowing the

defendants the ability to argue for a minor role adjustment at sentencing. (*Id.* at 11-12.) If the

plea agreements were not entered immediately, however, the Government stated at the status

conference that it would withdraw them and proceed to trial on more severe charges. (*Id.* at

13:5-17.)

In response to Petitioner's concerns and the potential expiration of the plea agreement,

Judge Schwartz took a recess of more than an hour to allow both Petitioner and Mendez-Rivera

an opportunity to review their respective plea agreements with their counsel and the assistance of

the Court's Spanish interpreter. (*Id.* at 15:23-16:18.) At the conclusion of the recess the Judge

Schwartz started that Petitioner and Mendez-Rivera were able to "spend a good deal of time,

more than an hour" discussing the plea deal with the assistance of the court's interpreter. (*Id.* at

17:2-5.) At that time, the parties advised the Court that both Petitioner and Mendez-Rivera had

executed their respective plea agreements and desired to plead guilty. (*Id.* at 17:8-21.)

In the plea agreement, Petitioner reserved the "right to argue that he is a minor participant

in the criminal activity and that he is entitled to a decrease" under the Sentencing Guidelines of

five levels in total to level 28. (*See* April 4, 2011 Plea Agreement (annexed to Answer as

Exhibit "D") at ¶ 7.) Although Petitioner reserved the right to appeal his sentence if he was not

successful in his application for a minor role adjustment, he nonetheless agreed that a sentence

within the Guidelines range for offense level 33 would be

"reasonable." (*Id.* at ¶¶ 8-9.) Additionally, Petitioner completed his Application for Permission

to Enter Plea of Guilty, which outlined the terms of his plea agreement and the consequences of

his guilty plea, in Spanish. (*See* Rule 11 Form (annexed to Answer as Exhibit "E").)

On April 7, 2011, Petitioner again appeared before Judge Schwartz and entered a guilty

plea to Count One of the Indictment, pursuant to the plea agreement. (*See* April 7, 2011

6

Transcript (annexed to Answer as Exhibit "C"); April 4, 2011 Plea Agreement (annexed to Answer as Exhibit "D")).   The Court's Spanish interpreter was again present for the proceeding. (*See* Ex. C, at 2.)   At the beginning of the proceeding, Judge Schwartz questioned Petitioner about his understanding of the English language:

> THE COURT:        Are you able to read or write any English?
>
> MR. RODRIGUEZ:  No, not at all.
>
> THE COURT:        Are you able to understand English when it's spoken to you?
>
> MR. RODRIGUEZ:  Yes, I understand quite a bit.  Not everything, but I do.
>
> THE COURT:        Okay.  We'll use the interpreter though for today.    Okay?
>
> MR. RODRIGUEZ:  Yes.

(*Id.* at 6:20-7:3.)  In executing the plea agreement, Petitioner attested that he had received the plea agreement from his attorney, that it had been translated into Spanish, and that he understood it fully.  (*See* Ex. D at 6.)  Petitioner also testified at the plea hearing that he had enough time to speak with his counsel, that his counsel answered his questions and that he was satisfied with the assistance that his counsel had given him.   (Ex. C at 10-11, 17-18.)

At the plea hearing, during the government's attempt to establish a factual basis for the plea, it became apparent that Petitioner was somewhat confused about the concept of conspiracy (*see id.* at 37:16-42:9).  The following exchange subsequently took place between Judge Schwartz, Petitioner's counsel, and Petitioner:

> MR. ALTMAN:       Judge, I don't think he quite understands now, nor has he even understood with me, the couldn't accept [sic] of conspiracy.
>
> THE COURT:        Well, it's important that he does.  Because that's what he's entering a guilty plea to.  Right?
>
> MR. ALTMAN:       Judge --

THE COURT:        And I want to make sure there's no confusion.      I'm happy to make sure that he's crystal clear on what that means.

MR. ALTMAN:        And I would ask you to do so. But the term "conspiracy" to him, and the term "agreement," I think would make it easier if we keep talking about an agreement, because he's troubled with conspiracy theory.        That's all.

THE COURT:        Well, we do have an answer yes under oath to this.  But I'm happy to make sure that he understands.

The crime that you're prepared to enter a guilty plea to is the crime of agreeing with one or more other people to distribute or possess with intent to distribute a controlled substance Cocaine and heroin is what's charged here.  And when individuals are involved in these sorts of agreements they can be responsible for the crime by doing a variety of different things.

MR. RODRIGUEZ:   Okay.

THE COURT:        Sometimes it's by helping someone who has drugs find a place to store them.  Sometimes it's by moving money that is the proceeds of drug activity from one place to another.  Because it allows the agreement to be successful.  Sometimes it's driving people from one place to another where those people either have the drugs or have the authority to do something with the drugs.  And the person who drives them back and forth knows that that's the point of taking them from one location to another.  So all of these acts can all be part of an illegal agreement to move drugs.

MR. RODRIGUEZ:   Well, being like that, yes.

THE COURT:        Okay.

Just one second. I just want to make sure. And so what I'm understanding –

MR. RODRIGUEZ:   I had never understood it as well as I do now.

THE COURT:        Do you understand?

MR. RODRIGUEZ:   Yes.

THE COURT:        Okay.

. . .

8

> THE COURT:        Now, so what I want to make sure that what we're doing here is you're able to describe, either in response to the Government's questions, or if you just want to describe what you did, but I don't know if you necessarily - - that's the way you want to go.  So that the Court can be satisfied that you engaged in acts, that you understood the purpose of those acts, and that you did your actions voluntarily.
>
> RODRIGUEZ:        Yes, that's fine.        Now I understand.

(*Id.* at 42:10-44:25.)

The government then suggested that they take a break to allow Petitioner to consult with his counsel and the interpreter.  (*Id.* at 45:4-46:2.)  Petitioner stated on the record as follows: "Actually, Your Honor, I understood, I not believe that will be necessary."  (*Id.* at 46:3-4.)  Judge Schwartz stated:  "Are you sure it's okay?"  And Petitioner responded:  "No, no. It's okay."  (*Id.* at 46:5-7.)  Thereafter, Judge Schwartz directed the government to start from the beginning in order to establish a factual basis for the plea.  (*Id.* at 48:10-16.)  At the conclusion of the Rule 11 colloquy, the court determined that Petitioner's guilty plea was knowing and voluntary and that there was a sufficient factual basis for the plea, and recommended that the United States District Judge accept Petitioner's guilty plea.  (*Id.* at 60:4-61:19.)

On April 7, 2011, Judge Schwartz issued her Report and Recommendation finding Petitioner guilty, to which no objections were filed.  On May 5, 2011, the District Court adopted the Report and Recommendation and entered Petitioner's guilty plea.

A probation officer prepared a Presentence Investigation Report ("PSR") in advance of sentencing.  (PSR dated August 3, 2011.)  The PSR calculated a total offense level of 33, resulting in an advisory guideline range of 151 to 188 months imprisonment.  (*Id.* at § 75.)  The PSR also placed Rodriguez in Criminal History Category II, based on a prior conviction in October of 2000 for illegal reentry into the United States.  (*Id.* at § 44.)

The PSR noted the existence of an unresolved charge against Rodriguez in Bronx County Supreme Court, New York, arising from an arrest in 1999 for possession of an illegal substance. (*Id.* at § 46.) The PSR explained that the probation officer had obtained a report from the New York City Police Department regarding the charge, which involved possession of more than four ounces of cocaine, and that a bench warrant issued in the year 2000 remained outstanding in connection with that charge. The PSR also noted that Rodriguez claimed to the probation officer that a relative had left a package at his home that he later discovered to contain drugs, and that he called the police to report the incident but was arrested. (*Id.* at ¶ 47.)

The PSR also noted that Petitioner "is fluent and reportedly literate in Spanish. While he appeared to understand a significant portion of the presentence interview in English, at times answering to questions in English, Rodriguez claims he understands more of the language than he can speak. He denies being able to read or write in English." (*Id.* at ¶ 67.) The PSR also noted Petitioner's self-reported "Gambling History." (*Id.* at ¶ 63.)

Prior to sentencing, Petitioner's counsel submitted a sentencing memorandum to the District Court. (*See* September 20, 2011 Letter from Steven Altman (annexed to Answer as Ex. F.) As permitted by the plea agreement, Petitioner sought a minor role adjustment pursuant to U.S.S.G. §§ 3B1.2 and 2D1.1(a)(3). Petitioner also requested a downward variance, pursuant to 18 U.S.C. §3553(a), arguing that his criminal history category overstated his criminal history. With regard to the second argument, Rodriguez noted that his criminal activities had all occurred within a nine-month period more than nine years prior to sentencing, which was close to the ten year outside period for consideration of past criminality, and that he had led a crime-free life since. (*See id.*) The Government opposed both requests.

On September 28, 2011, the District Court held a sentencing hearing.[2]  (*See* September 28, 2011 Sentencing Transcript (annexed to the Answer as Exhibit "G").)  During sentencing, the Court heard argument on Petitioner's two applications for a reduced sentence: (1) his request for a minor role adjustment and (2) his request for leniency because his criminal history category overstated his criminal history.

With respect to his request for a minor role adjustment, Rodriguez's counsel rested on his papers.  (*Id.* at 8; ECF No. 12-6, Sentencing Mem. at 1-3.)  He then proceeded to argue the motion to adjust the level of criminality largely on the basis of his written submission, emphasizing that the offenses that formed the basis for his criminal history occurred within a short period and that period was just shy of the 10 year cutoff for considering past criminal activity.  (*See id.* at 8-10; *see also* Rodriguez Sentencing Mem. at 3-4.)   In its rebuttal, the government noted that far from understating Rodriguez's true level of criminality, the criminal history category "fails to account for the fact that [Rodriguez] still has that cocaine possession case outstanding." (*Id.* at 12.)

The District Court then ruled on the motions.  It denied the minor role adjustment motion based on its understanding of Rodriguez's involvement in the conspiracy from the sentencing of Rodriguez's co-conspirator, Mendez–Rivera, as well as on the fact that Rodriguez had directed the delivery of almost a million dollars in cash and on the "enormous quantity" of drugs in the

---

[2] After some discussion regarding Petitioner's actual or legal name, the Court directed that the caption read "Antonio Rodriguez a/k/a Andy Flores-Tineo" to reflect Petitioner's use of both names.  The District Court then addressed the factual objections to the Presentencing Report ("PSR").  Petitioner disputed the allegation in paragraph 72 of the PSR that he paid a co-defendant's legal fees.  After determining that the contested fact would not affect any of the three steps of the sentencing process, including that the Government would not reply upon that disputed fact for any purpose at the sentencing, the Court stated that it would "disregard it for the purposes of today's sentencing."

conspirators' possession. The District Court also rejected the argument that the criminal history level overstated Rodriguez's true criminality. The Court reasoned that there would always be crimes that occurred close to the ten-year cutoff for considering past criminal activity and therefore that was insufficient reason to give such convictions less weight. (*Id.* at 13.) The Court also noted that given that it appeared that Rodriguez had been out of the United States for most of the past nine years she would not assume without more information that he had led a crime-free life during that period. (*Id.*) Finally, the District Judge commented that Rodriguez had, as the government suggested, "other charges of a similar ilk still unresolved." (*Id.*) Rodriguez' counsel did not object to the inclusion of the 1999 arrest and charge in the PSR and did not object to the sentencing court's mention of that matter during the proceeding. The Court denied Petitioner's applications, and adopted the PSR and its advisory Guidelines calculation: a total offense level of 33, criminal history category II, resulting in an advisory Guideline range of 151 to 188 months' imprisonment. (*Id.* at 15.)

The Court next heard argument on the sentencing factors outlined in 18 U.S.C. § 3553(a), as well as Petitioner's statement. In this regard, Rodriguez's counsel noted that Rodriguez had "a number of children" and argued that the amount of familial support received by Rodriguez "says volumes" of him, because in counsel's experience this phenomenon was unusual. Defense counsel further noted that counsel "c[a]me from a middle class family" and that familial abandonment "wouldn't have existed in [defense counsel's] world." (*Id.* at 18-19.) His counsel also noted that Rodriguez had "always had time to show a concern and love for his family" and asked the Court to take Rodriguez's familial support into account when sentencing him. (*Id.* at 19-20.)

The government then argued for a sentence at the high end of the guidelines range, arguing that the facts of the case suggest that . . . he was engaged in criminal activity at a very high level . . . involving a great deal of money, over which he oversaw the direction of another co-defendant" and suggesting that the case "only scratched the surface . . . concerning the extent of his involvement in that criminal activity." (*Id.* at 27-28.) In advocating for a sentence at the high end of the guidelines range, the Government also referenced the 1999 arrest and charge, noting that Rodriguez "was arrested in New York for possession of a fairly substantial amount of cocaine" and that despite Rodriguez's "explanations as to why he is not really guilty of that offense . . . the fact remains that he was arrested and that that case is still pending out there and it involved drugs." (*Id.* at 28.)

The Court then explained the reasons for its sentence, first commenting that the drug trade was not a victimless crime, but "hurt all sorts of people." (*See* Exhibit G, at 30.) The Court also noted that Petitioner committed a "well-planned" crime, involving "sophisticated drug trade with millions of dollars at stake," thereby deserving an enormous quantity of jail time." (*Id.* at 30-31.) In so doing, the Court emphasized that Petitioner had chosen "to essentially be in the big-time drug trade"; he seemed "like a clear-eyed businessman, who dealt in wealthy sums of money"; his crime was "done by smart businessmen who made a lot of money from dealing dope"; and he was "at or near the top of the pyramid" in terms of culpability. (*Id.*) In explaining the reasons for the sentence imposed, the Court <u>did not</u> mention the unresolved 1999 arrest and charge in the PSR. The Court then imposed a sentence in the middle of the advisory Guideline range – 170 months' imprisonment. (*Id.* at 131.)

On October 7, 2011, Rodriguez filed a Notice of Appeal, arguing that his trial counsel was ineffective and that the Court violated his due process rights by mentioning the unresolved

drug charge as a reason for refusing to downward adjust his criminal history level.   On November 27, 2012, the Third Circuit issued a written opinion in which it declined to address Petitioner's ineffectiveness claim, but otherwise rejected Petitioner's contentions and affirmed the District Court's sentence.   (*See* Exhibit A to Government's Answer.)

Petitioner timely filed the instant motion on April 15, 2013.   The Court ordered the Government to file its Answer on August 26, 2013.   After seeking several adjournments, the Government filed its Answer on January 12, 2014.   On February 24, 2014, Petitioner filed his traverse.   On March 13, 2015, the case was transferred to the undersigned.   The matter is now fully briefed and ready for disposition.

## III.   ANALYSIS

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).   Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).   In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).   "It is the policy of

the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010).  The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at \*9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

The Petitioner raises what he characterizes as six separate grounds for relief in his motion:

I.  COUNSEL FAILED TO PROPERLY REPRESENT THE DEFENDANT AT HIS CHANGE OF PLEA HEARING

II.  COUNSEL FAILED TO PROVIDE THE QUALITY OF REPRESENTATION GUARANTEED BY THE SIXTH AMENDMENT

III.  COUNSEL DEGRATED [SIC] DEFENDANT AT SENTENCING IN HIS ATTEMPT TO OBTAIN A LOWER SENTENCE

IV.  COUNSEL FAILED TO PRESENT A DEFENSE OF STATE CHARGES

V.  COUNSEL FAILED TO PROPERLY ARGUE A MINOR ROLE ADJUSTMENT

VI.  COUNSEL FAILED TO PRESENT FACTS TO THE COURT THAT COULD HAVE ALTERED THE OUTCOME

The Court construes Plaintiff to challenge his counsel's performance in connection with Petitioner's (1) guilty plea and (2) sentencing, and addresses his claims in order.

### a.  Counsel's Representation in Connection with his Guilty Plea

The Court construes the first two grounds to challenge his counsel's pre-plea representation, including counsel's representation in out-of-court meetings to present the plea to Petitioner, at the April 6, 2011 status conference, and at the Rule 11 conference before Judge

Schwartz.  Petitioner alleges that a language barrier existed between counsel and Petitioner, and that counsel failed to explain the plea agreement to him through a Spanish interpreter in out of court meeting(s) prior to the April 6, 2011 status conference.  He further appears to allege that his ability to confer for more than an hour with his counsel and with the assistance of the Court's Spanish interpreter at the April 6, 2011 status conference, did not cure the deficiency in his counsel's performance because he "calls into question whether or not the courts clerk is actually a certified translator and additionally questions whether what she stated to the defendant is in fact what was being explained to the defendant."  (ECF No. 1, Motion at 11-15.)

The Sixth Amendment guarantees the accused the "right ... to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

With respect to his first two claims, Petitioner alleges that defense counsel was ineffective during the plea bargaining process.  "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, ___U.S. ___, 132 S.Ct. 1376, 1384 (2012).  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). To evaluate a claim that a guilty plea was not knowing or voluntary due to ineffective assistance of counsel, the Court uses the familiar framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must show (1) that counsel's representation was deficient, meaning that it "fell below an objective standard of reasonableness"; and (2) "a reasonable probability that but for counsel's

16

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Under the first prong, courts must be "highly deferential" to counsel's performance, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

To satisfy the prejudice prong, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010). "[T]o obtain relief on this type of [*Strickland*] claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). Where a "petition contains no factual matter regarding Strickland's prejudice prong, and [only provides] ... unadorned legal conclusion[s] ... without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). Finally, "[b]ecause failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

17

The same two-part Strickland standard is applicable to ineffective assistance claims arising out of the plea process. *See Hill*, 474 U.S. at 57.  In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014).  Where a Petitioner alleges that he pleaded guilty as a result deficient advice from his attorney, must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

Here, Petitioner's allegations that his counsel was ineffective in connection with his guilty plea are based largely statements from his counsel, which have been cherry picked from the April 6, 2011 transcript of the status conference before Judge Schwartz.  At that conference, counsel was attempting to explain to the Court why Petitioner was not prepared to enter a guilty plea at that time.  One of the reasons offered by counsel was that Petitioner was dissatisfied with counsel because counsel had presented the plea deal to Petitioner, but counsel was unable to communicate or translate the plea deal to Petitioner in Spanish.  Counsel also stated on the record that he had suggested to Petitioner that he have his family members or jail personnel translate the plea deal for him.

Petitioner's argues that his counsel was deficient for failing to review the plea deal with him with a Spanish interpreter and suggesting instead that Petitioner have family members, inmates, or jail staff review the plea with him.  His argument, however, omits the crucial fact that, prior to his acceptance of the plea deal, Petitioner had the plea deal explained to him by counsel with the aid of a Spanish interpreter.  After counsel explained to the Court at the April 6, 2011 status conference that Petitioner was not prepared to accept the plea deal, in part, because

had not yet had the opportunity to have the plea deal explained to him by counsel though a Spanish interpreter, the Court immediately provided Petitioner and his counsel with the opportunity to review the plea deal for over an hour with the aid of the Court's Spanish interpreter. After that consultation, Petitioner accepted and signed the plea agreement.

Petitioner contends in his Petition, without any factual support whatsoever, that he "question[s]" whether the Court's Spanish interpreter was actually a certified translator. In his reply brief. Petitioner also appears to argue that the participation of the Court's Spanish interpreter was a conflict of interest because the translator was a Court employee. These allegations regarding the qualifications of the Court's Spanish interpreter and her alleged conflict of interest are entirely conclusory.

Petitioner also suggests that his factual allocution demonstrates that he did not fully understand the terms of the plea agreement, explaining that "[Petitioner] insisted that he did not know what types of drugs were in the truck or the amount of drugs the truck contained." (ECF No. 1, Pet. at 9.) As explained by the government, however, Petitioner ultimately testified that he knowingly conspired to distribute cocaine and heroin, he served as a courier for narcotics proceeds, and was responsible for assisting with the unloading of the drugs that were seized. (ECF No. 12-3, Ex. C at 45-53). Such conduct clearly provides an adequate factual basis for Petitioner's guilty plea. Similarly, Petitioner also states that counsel failed to explain the concept of conspiracy to him, but he acknowledges this alleged deficiency was cured at the plea colloquy because Judge Schwartz was able "to clarify the concept with Mr. Rodriguez, using an interpreter to translate." (*Id.*, Pet. at 23.) The plea hearing record also makes clear that Judge Schwartz clarified the concept of conspiracy for Petitioner, and that he fully understood the concept at the time he pleaded guilty.

In his Petition and his reply brief, Petitioner further states that defense counsel never "told him that signing the plea agreement would bar him from seeking a downward departure based on mitigating facts that should have been presented to the Court." He cites to his gambling addiction and debts as the mitigating facts. (ECF No. 13, Reply Br. at 4.) Plaintiff also alleges generally in his reply brief that the period of time he was provided to confer with counsel was insufficient.

Petitioner's allegations that he did not understand the plea deal and was not given sufficient time to consider it are also belied by his statements at the plea colloquy and sentencing. The plea agreement states that the parties "agree not to seek or argue for any upward or downward departure, adjustment or variance not set forth [in the plea agreement.]" (ECF No. 12-4, Ex. D at 8.) Petitioner attested at the guilty plea hearing he had received the plea agreement from his attorney, that it had been translated into Spanish, and that he understood it fully. (ECF No. 12-3, Ex. C at 17:6-22:5.) At the guilty plea hearing, at which the Spanish interpreter was again present, Petitioner testified that the plea agreement had been read to him in Spanish by the interpreter. He also completed a Spanish-language Rule 11 form to that same effect. Petitioner also testified that he had enough time to speak with his counsel, that his counsel answered his questions and that he was satisfied with the assistance that his counsel had given him. (*See id*; *see also* Ex. C at 10:20-11:4.) Finally, the Petitioner has failed to provide any facts in his motion to suggest that he would not have pleaded guilty to the conspiracy charge and would have insisted on going to trial.

Because Petitioner cannot establish either prong of *Strickland*, the Court will deny relief as to Petitioner's claims related to his counsel's alleged ineffectiveness in connection with his guilty plea.

**b. Ineffective Assistance of Counsel in Connection with Petitioner's Sentencing**

The Court next addresses whether Petitioner's arguments that his counsel was ineffective at sentencing. A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth*, 188 F.3d 99, 107 n. 11 (3d Cir. 1999); *United States v. Cocivera*, 104 F.3d 566, 570 (3d Cir. 1996). The clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the sentencing context is the two-pronged standard enunciated in *Strickland*. Under the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate a reasonable probability that, but for counsel's error, the result of the sentencing hearing would have been different. *Id.* at 694. In order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259–260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891–92 (3d Cir. 1987). The *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

**i. Claim that Counsel "denigrated" Petitioner**

First, Petitioner argues that counsel "denigrated" him at sentencing by focusing on the number of children he had fathered and by suggesting that people of Petitioner's social class do not usually support their families at sentencing. (*See* Pet. at 24-27.) Petitioner argues that, in doing so, counsel failed to act in accord with the standards set forth in *United States v. Cronic*,

21

466 U.S. 648, 659-60 & n.25 (1984), which holds that prejudice may be presumed in limited circumstances, such as where "counsel is ... totally absent." The Court agrees with the government that Petitioner cannot meet this exacting standard. To the extent that Petitioner suggests his counsel's remarks at sentencing regarding his family situation betrayed "invidious stereotyping." The Court has reviewed the record of the sentencing proceeding and agrees with the government that defense counsel was not attempting to denigrate Petitioner at sentencing. Instead, Petitioner's counsel was urging the District Court to take into account what, in counsel's experience, was something not often seen in drug trafficking cases: the support of a substantial number of family members, many of whom had traveled long distances just to attend the sentencing hearing. Furthermore, counsel filed a sentencing memorandum prior to sentencing, requesting both a downward departure and variance (ECF No. 12-6 (attached to Answer as Ex. F)), raised factual objections at the sentencing hearing, and argued vigorously for a reduced sentence. As such, counsel can hardly be said to have been "absent" from the sentencing process, such that Rodriguez was effectively without counsel under *Cronic*.

### ii.  Failure to Object to Court's Consideration of Unresolved Arrest

Petitioner next asserts that counsel was ineffective for failing to object to the mention of the unresolved 1999 arrest. (*See* Pet. at 28-29.) In his reply brief, Petitioner argues that (1) the sentencing Court would have granted the departure and (2) sentenced him to a lower guideline range had his attorney objected to the consideration of the unresolved 1999 arrest. (ECF No. 13, Reply Br. at 5-6.)

Relying on the Third Circuit's decision in *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009), Petitioner argued on direct appeal that the sentencing court violated his right to due process by considering the fact of his prior unresolved arrest as a basis for denying his

application for a more lenient sentence.  Reviewing for plain error, the Third Circuit

distinguished *Berry* and held that the District Court did not err in mentioning the unresolved

charge during the sentencing hearing:

> Upon consideration of the record, we conclude that the
> District Court did not plainly violate the principles of *Berry*. First,
> unlike the court in *Berry*, the District Court here did not rely on
> dismissed charges or on a "nol prossed" arrest that also formed the
> basis of the federal conviction. Instead, it relied on a pending
> charge for which a bench warrant was outstanding. Indeed, in
> *Berry* we recognized that "avoiding adjudication of guilt by failing
> to appear is quite different from never obtaining an adjudication of
> guilt because the charges were dismissed." *Id.* at 282 (citations
> omitted). Second, the PSR and the District Court did not rely on a
> "bare" record "without more." The probation officer obtained a
> report from the New York City Police Department and interviewed
> Rodriguez regarding the charge. This was more information than
> that before the district court in *Berry*. Moreover, Rodriguez never
> objected to the information contained in the PSR with respect to
> this charge. Thus, the PSR here, unlike that in *Berry*, "detail[ed]
> the underlying facts without objection from the defendant." *Id.* at
> 284. Finally, the District Court mentioned the prior charge only
> once, in ruling on Rodriguez's motion for a criminal history
> adjustment, which it denied for other reasons in addition to the
> pending charge.  By contrast, the court in Berry relied on prior
> arrests both in the context of the criminal history adjustment and in
> selecting the final sentence as it considered the § 3553(a) factors,
> and mentioned the prior arrest as the only reason to deny the
> motion for a criminal history adjustment. Accordingly, the District
> Court did not err in mentioning Rodriguez's pending charge during
> the sentencing hearing.

*United States v. Rodriguez*, 505 F. App'x 117, 121 (3d Cir. 2012).  Even if Petitioner's counsel

should have objected to the Court's mention of the unresolved charge in ruling on his motion for

a criminal history reduction, Petitioner's ineffective assistance claim fails because he cannot

show under *Strickland* that he was <u>prejudiced</u> by the his attorney's alleged error.  As noted by the

Third Circuit, the sentencing Court rejected the argument that the criminal history level

overstated Rodriguez's criminality for several reasons other than the unresolved arrest and

mentioned this fact only in passing.  The Court did not mention or rely on the unresolved arrest

23

at all in imposing sentence.  Accordingly, Petitioner cannot show that he was prejudiced by his attorney's failure to object to the Court's mention of the unresolved pending charge during the sentencing hearing.

### iii.  Failure to Obtain Minor Role Adjustment for Petitioner

Petitioner also argues that counsel was deficient for failing argue more strenuously for a minor role adjustment.  Petitioner appears to acknowledge that counsel submitted a sentencing memorandum arguing for the minor role adjustment, but takes issue with the fact that counsel rested on his papers at sentencing with respect to the minor role adjustment.  (ECF No. 1, Pet. at 30-32.)  The Third Circuit "has held that the failure to argue an appropriate downward departure constitutes ineffective assistance of counsel." *Vega v. United States*, 269 F.Supp.2d 528, 533 (D.N.J. 2003) (citing *United States v. Headley*, 923 F.2d 1079, 1083-84 (3d Cir.1991)).  However, the record in this case shows that defense counsel properly moved for a downward adjustment for Petitioner's role as a minor offender pursuant to U.S.S.G. § 3B1.2, and that the District Court considered the sentencing memorandum and rejected those arguments.  *See also Rolon v. United States*, No. CIV. 03-3902 (WHW), 2006 WL 2417275, at *8 (D.N.J. Aug. 21, 2006) (finding no ineffective assistance of counsel under similar fact).  As such, there is nothing to suggest that the Court would have granted the minor role adjustment had Petitioner's counsel reiterated his arguments from his memorandum during the sentencing proceeding.

### iv.  Failure of Counsel to Raise Additional Mitigating Facts

Finally, Petitioner argues that his counsel failed to argue additional Section 3553(a) factors in support of a lower sentence.  Specifically, Petitioner argues in his Petition that counsel should have argued for a "specified sentence" and presented evidence of what sentence would be

24

appropriate for similarly situated defendants and should have argued that Petitioner's drug addiction and gambling habit and debts warranted a lower sentence. (ECF No. 1, Pet. at 34.)

Petitioner's argument that counsel failed to argue for a "specified sentence" is meritless. As explained by the government, "[p]ursuant to the parties' fully stipulated plea agreement, other than the ability to argue for a minor role adjustment, counsel was limited to arguing for a sentence at the low end of the Guidelines range, or 151 months." In his sentencing memorandum and at the sentencing hearing, counsel requested a sentence below the advisory range. Petitioner also requested a downward variance, pursuant to 18 U.S.C. § 3553(a), arguing that his criminal history category overstated his criminal history. As acknowledged by Petitioner, his gambling habit was detailed in the PSR. The Court also agrees with the government that Petitioner's alleged drug addiction would not provide a reasonable, let alone credible, explanation for his involvement in the amount of drugs and money at issue here. There is nothing to suggest that Petitioner's drug addiction or gambling habit and debts would have swayed the Court into giving Petitioner a lower sentence. To the contrary, as explained by the sentencing Court, a sentence in the middle of the advisory Guideline range, 170 months' imprisonment, was appropriate given that Petitioner committed a "well-planned" crime, involving "sophisticated drug trade with millions of dollars at stake," and deserved "an enormous quantity of jail time" for "having disregarding, knowingly, the laws of this country, and engaging in a crime that may seem like it's a victimless crime, but it's not." (Ex. G, at 29-31). Finally, Petitioner expressly agreed in his plea agreement that such a sentence would be reasonable.

Here, the Court finds that defense counsel was not deficient for failing to make additional Section 3553(a) factors arguments at sentencing and that Petitioner cannot demonstrate that "but

for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687.

### c. Certificate of Appealability

Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.   **CONCLUSION**

For the reasons set forth in this Opinion, Petitioner's motion is dismissed and the Court denies a certificate of appealability. An appropriate Order follows.

_____
Madeline Cox Arleo, U.S.D.J.

Date: Sept 27, 2016